**Milton P. HIGGINS, III**

**v.**

**Nathan SCHERR.**

**Civ. No. S 87–14.**

United States District Court,
D. Maryland.

March 9, 1987.

James L. Shea, Geoffrey R. Garinther, Venable, Baetjer & Howard, Baltimore, Md., for plaintiff.

Neil J. Ruther, Burke, Gerber, Wilen & Francomano, Baltimore, Md., for defendant.

MEMORANDUM OPINION

SMALKIN, District Judge.

This is a diversity case seeking recovery on an alleged oral contract for the performance of certain services. It is alleged in the complaint that Scherr, owner of a Preakness winner (Aloma's Ruler), decided several years ago "to become more involved in the horse business." (Complaint, ¶ 4). To that end, he utilized the plaintiff, who allegedly had extensive expertise and contacts in the thoroughbred industry, to help in syndicating Aloma's Ruler at stud, in buying additional horses, and in other ways. There is no allegation that the parties ever agreed on any compensation to be paid Higgins for the actions just enumerated. Rather, it is alleged only that "[t]horoughout the period [1983 to date], Higgins and Scherr reached an understanding that Higgins would be duly compensated for his services." (*Id.*, ¶ 7). The remaining factual allegations of the complaint detail the services, beginning in the spring of 1985, that Higgins, who is not a licensed real estate broker in Maryland, made to buy Scherr a horse farm. "Higgins ... did Scherr's bidding, meeting with various farm owners to discuss the price and terms of potential sales." (*Id.*, ¶ 8). It is alleged that Higgins negotiated on Sherrr's behalf with the owners of two well-known Maryland thoroughbred farms, Hexton and Sagamore. The negotiations for Sagamore were apparently very intense, and the deal was almost closed when, according to the complaint (at ¶ 11), "Scherr abruptly and without just cause or excuse withdrew from the Sagamore Farm deal, again not having compensated Higgins for either his expenses or time spent on the proposed purchase." The complaint seeks $100,000 damages on theories of breach of contract, *quantum meruit*, and "promissory estoppel."

The defendant has moved to dismiss or for summary judgment, submitting an attested certificate from the Maryland Department of Licensing and Registration showing that the plaintiff has never been a licensed real estate broker or salesman in Maryland. The plaintiff has submitted an opposing memorandum, without any affidavit.

When a summary judgment motion is made under Rule 56, Fed.R.Civ.P., the opponent has the burden of showing, by proper affidavits or other evidence, the existence of a genuine dispute of material fact, and he cannot simply rest upon his unverified complaint. Fed.R.Civ.P. 56(e). When no such evidence is submitted, as in this case, the movant is entitled to summary judgment if his motion has legal merit. *Celotex Corporation v. Catrett*, — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not submit materials negating any factual dispute; it is up to the opponent to make a submission, beyond the complaint, and proper under Rule 56(e), showing that there is a material dispute of fact. *Id.* This, the plaintiff in the present case has not done.

Therefore, the Court examines the defendant's argument in support of summary

judgment. Maryland's substantive law clearly applies in this diversity case. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). Under Maryland statute, no one may sue for or recover "for compensation for any act done or service rendered" which required for its performance a real estate broker's or salesman's license. MD. ANN. CODE art. 56, § 228 (1975) (1983 Repl.Vol.). A license is required, *inter alia,* to attempt to purchase, for another, real estate, for any "fee, commission, or any other valuable consideration." CODE, art. 56, §§ 212(a) and (e); 217(a). A license is required even if only one transaction in real estate is involved. CODE, art. 56, § 212(e). It is also required even if the would-be broker's role is "indirect," and even if the real estate sale aspect is "an incidental part of a transaction." *Id.*

The Maryland courts have strictly enforced section 228's bars to suit and recovery. *See, e.g., Zalis v. Blumenthal,* 254 Md. 265, 254 A.2d 692 (1969). It is true that the section 228 bars do not apply to "one who sells a business comprised of goodwill and personal property...." This rule was stated in *Glaser v. Shostack,* 213 Md. 383, 388, 131 A.2d 724, 726 (1957), upon which plaintiff appears to rely in opposing summary judgment. (Paper No. 5, at 5). More to the point, though, is the *full* statement of the rule in *Glaser:*

> We think the provisions of the sub-title "Real Estate Brokers" do not encompass the activities or rights of one who sells a business comprised of goodwill and personal property, *and not real estate or an interest in real estate.*

213 Md. at 388, 131 A.2d 724. (Emphasis added.)

Although it is undoubtedly true that many businesses' assets may consist entirely of personalty, or the business might not depend upon any interest in land in order to operate, it is irrefutable that one could never operate a horse farm without "real estate or an interest in real estate." Horses need the earth to stand and graze upon, just as they need water to drink and air to breathe. As long as that earth is within the boundaries of the State of Maryland, it cannot be the subject of a lawsuit such as the present one, by an unlicensed broker-agent, whether or not the parties contemplated a sale of the farm *with* personalty, as a going concern, or without, simply as a piece of real estate. Thus, plaintiff's suit is barred by Maryland law. *Glaser v. Shostack.*

In an attempt to avoid summary judgment, plaintiff, in his memorandum, raises the argument that the expected compensation was not to be a commission, but, rather, an interest in the farm itself. This is immaterial, because the statute prohibits any suit for "compensation" for unlicensed acts, not merely suits to recover the customary commission. Finally, the prior relationship of the parties is also immaterial. This suit is clearly and plainly one seeking to recover for unlicensed real estate brokerage activities. The prior dealings of the parties are only pleaded by way of background, and there is no allegation of any *promise* of payment for services other than in the form of an interest in the horse farm which Higgins was to purchase for Scherr. Most significantly, though, there is no submission under oath establishing the "facts" asserted in plaintiff's opposition memorandum. Thus, the defendant is entitled to the entry of summary judgment. *Celotex Corporation v. Catrett.* Of course, recovery on *quantum meruit* would obviously be barred by § 228 as fully as recovery on an express contract, and there is no separate cause of action for "promissory estoppel" known to this Court; promissory estoppel is merely a substitute for consideration. *See Simpson on Contracts* (2d ed. 1965) at 112. Thus, summary judgment will be entered as to the entire complaint.

For the reasons stated, an order will be entered separately, granting summary judgment in favor of the defendant, against the plaintiff, with costs.