576 A.2d 760

**MARYLAND REAL ESTATE COMMISSION**

v.

**Robert L. JOHNSON et al.**

**No. 35, Sept. Term, 1988.**

Court of Appeals of Maryland.

July 24, 1990.

Jonathan Acton, II, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., Francis X. Pugh, Asst. Atty. Gen., Baltimore, all on brief, for appellant.

Cable, McDaniel, Bowie & Bond, Alvin C. Monshower, Jr., Michael L. Jennings, all on brief, Baltimore, for amicus curiae Maryland Ass'n of Realtors, Inc.

James A. Hyatt, Germantown, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

COLE, Judge.

We are presented in this case with two questions: (1) whether the Maryland Real Estate Commission (the Commission) has standing to appeal court decisions, and (2) if so, whether the sale of a business operating under a lease is a real estate transaction requiring the broker of the transaction to hold a real estate license.

The facts giving rise to these issues may be summarized as follows. In 1986, the Commission received twenty-five claims against the Real Estate Guaranty Fund (Guaranty Fund or Fund)[1] as a result of the activities of Edward Cowal (sales agent). The claimants alleged that Mr. Cowal, acting as a real estate broker[2] and doing business as

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. Claimants filed to recover their actual losses pursuant to Annotated Code of Maryland (1988 Repl.Vol.), Art. 56, § 217A(a), which provides in pertinent part:

   (a) **In general.**—(1) The Maryland Real Estate Commission shall establish and maintain a Real Estate Guaranty Fund from which, subject to the provisions of this section, any person aggrieved by a real estate broker or real estate salesman, duly licensed in this State, performing any action for which that license is required by this subtitle, or the unlicensed employee of any real estate broker, arising out of a real estate transaction involving real estate located in this State, by reason of the theft or embezzlement of money or property, or money or property unlawfully obtained from any person by false pretense, artifice, trickery, or forgery or by reason of any fraud, misrepresentation or deceit may recover compensation of his actual loss as proven before the Commission in an amount not exceeding $25,000 in consideration of any claim.

2. Md. Code Ann. Art. 56, § 212(a) provides in pertinent part:

   (a) **"Real estate broker" defined.**—"Real estate broker" shall mean any person, association, co-partnership or corporation foreign or domestic, who for another and for a fee, commission or any other valuable consideration sells, purchases, exchanges, leases, rents or collects rent for the use of real estate or who attempts or who offers by verbal solicitation, advertisement or otherwise to perform any

Gibraltar Realty Company, contracted for the sale of "business enterprises," and kept the deposits made by the claimants even though the sales did not occur. The Commission investigated and dismissed the claims, finding that the transactions in question were business transfers not relating to real estate as required for coverage by Maryland Code (1988 Repl.Vol. and 1989 Cum. Supp.) Art. 56, § 217A(a). Thus, the Fund was not liable for payment to . these claimants. This decision was reached despite the fact that leases for the businesses had to be procured by the purchasers in order for the sales to occur.

Twelve of the claimants requested and received a preliminary hearing before the Commission. Subsequent to that consolidated hearing, all twelve claims were dismissed by the Commission for lack of legal sufficiency. Eight of those claimants appealed to the Circuit Court for Prince George's County in two separate appeals. The appeal by the first appellant was heard by Judge Jacob Levin who affirmed the Commission's findings. The appeal by the remaining appellants was heard before Judge Audrey Melbourne. Thereafter, all appellants joined in a motion for consolidation of all cases and rehearing before both Judges

---

such function, or who aids, attempts or offers to aid, for a fee; any person in locating or obtaining for purchase or lease any residential real estate, or who is regularly engaged in the business of dealing and trading in real estate or leases and options thereon, or who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both, or who is engaged in the business of subdividing and selling land in building lots or sites, whether such real estate is located in this or any other state or the District of Columbia.

§ 217 provides in pertinent part:

(a) **Unlawful to carry on business without license;** ...—From and after June 1, 1939, it shall be unlawful for any person, co-partnership, association, or corporation to engage in or carry on the business of or act in the capacity of a real estate broker or real estate salesman within this State without first obtaining a license as herein provided.

Levin and Melbourne. These judges presided over a subsequent hearing on a motion for reconsideration, and they reversed the Commission's ruling and remanded the cases for findings consistent with the circuit court's decision. The Commission appealed to the Court of Special Appeals but this Court granted certiorari prior to decision by the intermediate appellate court.

## I

■ Regarding the issue of standing to appeal, the Commission concedes that this Court has previously questioned but did not decide whether the Commission could appeal a circuit court reversal of a Commission decision. *Real Estate Commission v. Tyler,* 268 Md. 641, 642–43, 303 A.2d 778, 779 (1973). In *Tyler,* this Court affirmed the trial court's order reversing the Commission's denial of a renewal application. The Court chose to address the merits rather than to dismiss the Commission's appeal *sua sponte* because no consideration had been given to the Commission's right to appeal. The Court cautioned the Commission that any future appeals by the Commission would have to address the issue of standing or face dismissal. *Id.* Therefore, the Commission now contends that its position with respect to decisions affecting the Fund is analogous to the position of the Consumer Protection Division of the Office of the Attorney General in *Consumer Protection Division v. Consumer Publishing Co.,* 304 Md. 731, 501 A.2d 48 (1985).

In *Consumer Protection Division,* we held that the Division does have standing to appeal due, among other things, to its powers of rulemaking, investigating and prosecuting alleged violators of certain statutes, and its ability to hold hearings. Additionally, the Division has a strong interest in the outcome of its cases against violators, and would be clearly aggrieved by a reversal of its orders by a court. *Id.* at 746, 501 A.2d at 56.

The Commission points out that its hearings are contested cases under Md.Code (1984 Vol. and 1989 Cum.Supp.) Ann. § 10–201(c) of the State Government Article, and the Assistant Attorney General is made a party in COMAR 09.11.03.-04g. The Commission further emphasizes that its purpose, like that of the Consumer Protection Division, is the protection of the public. Finally, the Commission notes that it has a strong policy interest in the outcome of the case as the Fund which it administers will be bound by the decision.

This extended comparison to the Consumer Protection Division is an attempt to distinguish the Commission's position from the position of the Board of Zoning Appeals in *Board of Zoning Appeals v. McKinney,* 174 Md. 551, 199 A. 540 (1938).

In *McKinney,* the Board of Zoning Appeals denied a permit for the operation of a gasoline service station because it conflicted with the zoning established for the area in question. Subsequently, some real estate changed ownership and use in the area, and the Board, after a rehearing, reconsidered its decision and granted the gasoline station a permit. McKinney, who operated a church in the vicinity, appealed to the Baltimore City Court which reversed and annulled the order of the Board. It was from this order that the Board appealed. *McKinney* is relied on by the Respondents for the proposition that administrative agencies acting in a quasi-judicial capacity cannot appeal reversals of their decisions by circuit courts unless the authority to appeal is provided by statute. *Id.* at 560–61, 199 A. at 544.

In *McKinney,* we held that the Board of Zoning Appeals has no inherent standing to appeal circuit court decisions because

[i]t has no executive duties, it formulates no policies, its function is merely to find facts, to apply to those facts rules of law prescribed by the Legislature, and to announce the result. It has no interest, personal or official, in the matters which come before it other than to decide

them according to the law and the proved fact, and it is in no sense a party to such proceedings.

*Id.*

This Court has noted, however, that the above-stated description does not apply to all agencies and boards. *See County Commissioners of Carroll County v. Gross,* 301 Md. 473, 483 A.2d 755 (1984). Consequently, if the Commission can show that it meets the criteria of *Consumer Protection Division,* it will have standing to appeal despite the limitations set forth in *McKinney.*

This Court is convinced that it is not confronted with a *McKinney* situation. The Commission is sufficiently different from the Board of Zoning Appeals in *McKinney,* and sufficiently similar to the Consumer Protection Division of the Office of the Attorney General to have standing to appeal court decisions which affect the Fund managed by the Commission. Absent statutory authority, zoning boards have no interest in the outcome of their decisions. If the Board's decision is overruled, it is not thereby aggrieved in the legal sense by that decision. Conversely, the Commission will be aggrieved by the reversal of its decision because the Fund it manages will be required to disburse monies to the claimants. Additionally, the Commission, much like the Consumer Protection Division, has rulemaking powers over its members, investigates claims, and can punish violators. For all of these reasons the Commission is different in kind from those quasi-judicial agencies which have no standing, absent legislative authorization, to participate as parties in the appeals of their decisions. We hold it has standing to maintain this appeal.

## II

We now decide whether this transfer of a business subject to a lease arose out of a real estate transaction so that the broker handling the transaction was required by statute to be a licensed real estate broker.

This Court has previously examined the meaning of the term "arising out of a real estate transaction." In *Sheppard v. Bay Country Realty Inc.*, 297 Md. 88, 465 A.2d 857 (1983), we construed this particular language in deciding that the sale of interests in a limited partnership which would invest in real estate was not the type of transaction the legislature intended to protect through the Fund. *Id.* at 96, 465 A.2d at 861. In *Sheppard*, a claim was made against the Fund based upon the acts and omissions of a licensed real estate broker who sold investment shares in two limited partnerships which eventually became insolvent. The Commission's denial of relief was upheld by this Court. The Commission concluded that the claimants had been aggrieved by the acts of a licensed real estate broker who failed to return investments which he had personally guaranteed. The claims were denied, however, because the Commission determined that the losses did not arise out of a real estate transaction within the meaning of § 217A. *Id.* at 94, 465 A.2d at 860.

We held that the words "arising out of a real estate transaction," added to the statute by Chapter 309 of the Acts of 1976, were "words of limitation on the scope of eligible claims against the Fund." *Id.* at 95, 465 A.2d at 860. Quoting from the title of the 1976 amendment, we noted that the new language was added for "the purpose of specifying that the Real Estate Guaranty Fund applies only to transactions arising out of a real estate business." *Id.* at 96, 465 A.2d at 861. We then looked at § 212(a) and found no mention of the syndication of investments in real estate limited partnerships either by express terms or by necessary implication.

The question then is whether sales of businesses which are subject to leases are covered, either expressly or by necessary implication, by the statute. Petitioners point to *Glaser v. Shostack*, 213 Md. 383, 131 A.2d 724 (1957), for support, contending the language of § 212(a) means that the transaction in question is not the kind intended to be covered by the Fund. In *Glaser*, the sellers of a business

were claiming that the sale in question was a real estate transaction for which a real estate broker's license was required. This claim was intended to prevent the broker, who did not have a real estate license at the time of his first contact with the sellers, from collecting a commission on the sale. *Id.* at 387–88, 131 A.2d at 726.

The Court examined the evidence and found that there had been discussions among the parties regarding the premises which housed the business involved, but that the broker's "contract was only to sell the ... business as such and not to procure the lease." *Id.* at 388, 131 A.2d at 726. The Court went on to note that no assignment of an existing lease was involved, and that the owners of the business were not the owners of the real estate on which the business was located. The Court concluded that the act of finding a purchaser for a business, its goodwill, fixtures, and stock was not an act which required the broker to have a real estate license. *Id.* at 388, 131 A.2d at 726–27. Therefore, he could collect a commission.

The facts of the instant case are strikingly similar to the facts in *Glaser* in many respects. Leases were discussed in both cases, but in neither case was the sales agent to procure the new lease. There was no assignment of the existing lease involved. The purchaser was required to procure a lease, but it need not have been done through an assignment of the existing lease. In neither case was the owner of the business also the owner of the land on which the business was located; nor was the landowner a party to the contract.

Here, however, the contract does refer to leasehold interest. "Leasehold interest" is listed along with such items as goodwill, trade name, fixtures, and inventory in the sale of the laundromat business involved here. The contract of sale provides that the purchaser is responsible for obtaining a mutually satisfactory lease from the landlord. The contract does not expressly place any obligation to obtain the landlord's consent to an assignment, or to obtain a new lease, on the seller, or on Cowal. Nor is there a basis to

infer that there was any understanding resting in parol, among buyer, seller, and broker, that Cowal was to arrange for an assignment of the existing lease or to negotiate a new lease. Under all of these circumstances the reference in the contract to "leasehold interest" should be interpreted, the Commission contends, as meaning that the seller is willing to give up the location of the business either by effectively assigning the lease or by surrendering the remainder of the term to the landlord so that a new lease can be effected between the buyer and the landlord.

Despite the fact that Respondents alone were contractually responsible for procurement of the leases, Respondents maintain that the necessity of a lease and the condition that it be assigned in order for the sale to be completed make the real estate aspect of the transaction crucial. Respondents therefore argue that the transactions in the instant case were sales arising out of real estate transactions for which a real estate broker's license was required.[3]

Respondents urge us to adopt the view expressed by the New Jersey case of *Kenney v. Patterson Milk and Cream Co.*, 110 N.J.L. 141, 164 A. 274 (1933). New Jersey, however, allows transactions involving the sale of a business subject to a lease to be severed into its component parts even if the commission agreement does not separately value the different aspects of the transaction. *See Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 89 N.J. 286, 445 A.2d 1149 (1982). This allows unlicensed brokers to collect commissions for the sale of the businesses alone, and requires a real estate broker's license only to collect commissions on the realty portions of sales of

---

**3.** *See Higgins v. Scherr*, 655 F.Supp. 368 (D.Md.1987), in which the District Court held that an unlicensed broker was not entitled to a commission for the sale of a horse farm. The court held that no matter what the intent of the parties, a horse farm could not operate without "real estate or an interest in real estate." *Id.* at 370. The court left open the possibility that a non-licensed broker could earn a commission from the sale of a business which "might not depend upon any interest in land in order to operate." *Id.*

businesses subject to leases. It follows, then, that an unlicensed broker could conduct the sale of a business subject to a lease so long as the unlicensed broker was not involved in any aspect of the transfer of the lease. The New Jersey view is, therefore, of no assistance to Respondents.

The Commission argues that we should follow the position established by New York in *Weingast v. Rialto Pastry Shop, Inc.,* 243 N.Y. 113, 152 N.E. 693 (1926), and amplified in *Claggett v. American Bowling and Billiard Corp.,* 48 N.Y.S.2d 856 (1944). New York adheres to the view that a lease is merely incidental to a business, and since the transfer of the business is the primary objective of the transactions, the transfer of the accompanying lease is not sufficient to bring the transaction within the purview of the real estate broker's licensing statute. The New York courts focus on the belief that purchasers of businesses are in the market for ongoing businesses and not for the lease of a location in which to conduct a business.

Because neither view adequately addresses all of the nuances in the instant case, we decline the invitation to adopt either one. Rather, we believe that the Maryland statutes which govern the Guaranty Fund are adequate to provide a resolution of the issues raised by the instant case without resort to the decisions of other jurisdictions. Art. 56, § 217A makes clear that the fund was established to provide security for members of the public involved in real estate transactions. This statute reflects the importance which people historically attach to the transfer of real estate. The legislature saw fit to require the licensing of individuals who represent buyers and sellers of land. The financial responsibility of the licensee is assured by a Fund maintained by contributions from licensed real estate brokers and available to compensate buyers and sellers of land for losses created by the improper acts of licensed real estate brokers. The Fund is inextricably bound to Art. 56, § 212(a) which sets forth those acts for which a real estate broker's license is required. We must, therefore, examine

the acts performed by those individuals who represent the buyers of a business in light of both § 212(a) and § 217A.

This examination reveals that a real estate broker's license is not required to broker the sale of a business subject to a lease as long as the individual brokering the transaction is not involved in the acquisition of the lease by the purchaser. Clearly the Guaranty Fund does not protect buyers and sellers in this situation. A sales agent who does become involved in the lease negotiations as specified in § 212(a) is required by § 217(a) to have a real estate broker's license. If he does have a real estate broker's license, the Guaranty Fund will protect the buyers and sellers in the event the broker performs any improper act listed in § 217A. If the sales agent does not have a real estate broker's license the Fund will not offer such protection. Under such circumstances, the buyers and sellers proceed at their own risk.

The sales agent in the instant case was engaged by prospective purchasers for the purpose of finding businesses which the purchasers could acquire. The sales agent was not hired to procure any interest in real estate for his clients. He located businesses for his clients and arranged for the sales of those businesses. Where the businesses were subject to leases, the sales agent specifically left the procurement of the lease to the purchasers. In fact, he was careful to avoid any involvement with that part of the transaction dealing with the property where the businesses were located. The only individuals involved in the lease negotiations were the purchasers, the sellers, and the lessors.

Since the sales agent's performance did not in any way affect the leases of the premises where the businesses were located, the sales agent did not perform any act or render any service for which a real estate broker's license is required under § 212(a). It follows then, that since the loss was not the outgrowth of conduct for which a real estate broker's license is required, the Guaranty Fund is not liable and the claimants may not recover therefrom.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. RESPONDENTS TO PAY COSTS.