592 A.2d 1110

Sylvia E. HEFT

v.

MARYLAND RACING COMMISSION et al.

No. 78, Sept. Term, 1989.

Court of Appeals of Maryland.

July 24, 1991.

Henry R. Abrams, Alan M. Foreman, and Matthew G. Dobson, Weinberg and Green, Baltimore, and Hal C.B. Clagett, Sasscer, Clagett, Channing and Bucher, all on brief, Upper Marlboro, for appellant.

Bruce C. Spizler, Asst. Atty. Gen. and J. Joseph Curran, Jr., Atty. Gen., on brief, Baltimore, for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE *, RODOWSKY, McAULIFFE and ADKINS **, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ELDRIDGE, Judge.

This case arose out of a thoroughbred horse race at the Laurel Race Course; it concerns the plaintiff's claim that the horse finishing first in the race should have been disqualified because he interfered with two other horses during the running of the race. The principal issue on appeal is whether, under the Maryland Racing Commission's rules applicable at the time of the race here involved, COMAR 09.10.01.01 to 09.10.01.78, or under due process principles, the Racing Commission was required to conduct a hearing to review the decision of the stewards when no timely objection was made to the running of the race, when the stewards themselves instituted an inquiry, and when, at

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

the conclusion of the inquiry, the stewards decided not to disqualify the horse finishing first.[1]

## I.

The Dancing Count Stakes, a $50,000 stakes race for three-year-old thoroughbreds, was run as the tenth race at Laurel Race Course on February 4, 1989. The plaintiff in the present case, Sylvia E. Heft, entered her horse Pulverizing in the race. Four other horses participated in the race, namely Assault Party in the first post position, Diamond Donnie in the second position, My Favorite Socks in the third position, and Dr. Sure in the fourth position. Pulverizing occupied the fifth position.

As the horses left the starting gate, Diamond Donnie allegedly veered to the right, interfering with My Favorite Socks and Dr. Sure. The plaintiff later claimed that Diamond Donnie's action constituted an infraction of the Commission's Rules of the Race, particularly COMAR 09.10.01.-50C and COMAR 09.10.01.50D, and required the disqualification of Diamond Donnie.[2] When the alleged infraction of the Commission's rules occurred, however, it was not observed by Heft, her trainer, or her jockey. The horses finished the race in the following order: Diamond Donnie,

---

**1.** The rules of the Racing Commission which are set forth and discussed in this opinion are those which were in effect when the race giving rise to this case occurred and which were in effect when the Commission decided this case. Both the plaintiff and the defendants, in their briefs in this Court, have indicated that some of the Commission's rules have been revised since the Commission's decision in this case.

**2.** COMAR 09.10.01.50C states as follows:

"C. A horse crossing another so as actually to impede him shall be disqualified, unless the impeded horse was partly at fault or the crossing was wholly caused by the fault of some other horse or jockey."

COMAR 09.10.01.50D provides:

"D. If a horse or jockey jostles another horse, the aggressor may be disqualified, unless the impeded horse or his jockey was partly at fault, or the jostle was wholly caused by the fault of some other horse or jockey."

first; Pulverizing, second; Assault Party, third; Dr. Sure, fourth; and My Favorite Socks, fifth.

At the conclusion of the race the stewards instituted an "Inquiry" and reviewed the videotapes of the race. No owner, trainer, jockey, or anyone else, however, filed an objection concerning the running of the race. At the conclusion of the inquiry, the stewards determined not to disqualify Diamond Donnie and certified the results of the race as official. The videotapes of the race then became available to the public. After viewing the tapes, and within forty-eight hours after the Dancing Count Stakes, Heft filed an appeal in writing with the Maryland Racing Commission. She requested a hearing before the Commission on the stewards' failure to disqualify Diamond Donnie. Presumably, if Diamond Donnie were disqualified, first place would have been awarded to the plaintiff's horse Pulverizing.

On February 10, 1989, the Commission delivered a letter to Heft stating that she had failed to lodge an objection to the race within the time specified by the Rules and that, consequently, she did not protect her right of appeal.[3] The Commission's letter stated:

> "[S]ince your client did not act within the time frame specified, i.e., 'before or immediately after his jockey has passed the scales', your client waived any right she may have had to file a complaint and therefore did not protect her right of appeal. In fact, there was not a complaint from anyone involved in the race. The Stewards took no action and the race results became official. At this

---

3. COMAR 09.10.01.50G states that
   "[c]omplaints under this rule ... shall be made to the clerk of the scales or to the stewards before or immediately after his jockey has passed the scales...."
   *See also* COMAR 09.10.01.35H, which states:
   "H. Objections to a horse based on an occurrence in a race shall be made before the numbers of the horses placed in the race have been officially confirmed."

juncture, there is nothing to appeal and it is far too late to register a complaint with the stewards."

Shortly thereafter, Heft filed this action in the Circuit Court for Baltimore City against the Commission and the racing stewards, Clinton P. Pitts, Jr., John Heisler, Jean Chalk and William Passmore. Heft asserted that the Commission's rules provided for an absolute right of appeal to the Commission from the stewards' action regardless of whether the party appealing filed a timely objection to the race, that the denial to Heft of a right of appeal to the Commission violated Heft's state and federal constitutional rights of due process and equal protection, and that the stewards had violated their mandatory duty by failing to disqualify Diamond Donnie and award first place to Pulverizing. Heft sought an order requiring that the Commission provide her with an administrative appeal. Alternatively, she sought a writ of mandamus requiring the stewards to disqualify Diamond Donnie and award first place to Pulverizing.

The circuit court, after a hearing, rejected Heft's contentions, stating that she had no right to an appeal to the Commission because she had failed to file a timely objection, that the regulatory scheme was constitutional, and that the steward's decision not to disqualify Diamond Donnie was not a proper basis for the issuance of a writ of mandamus.

Heft appealed to the Court of Special Appeals, and before argument in that court, we issued a writ of certiorari.

## II.

The General Assembly has specifically granted to the Racing Commission "full power to prescribe rules, regulations and conditions under which all horse races shall be conducted within the State of Maryland." Maryland Code (1957, 1988 Repl.Vol.), Art. 78B, § 11(a). The Legislature's purpose in granting to the Racing Commission the authority to promulgate rules was to assure that horse races in

Maryland are "conducted fairly, decently and clean[ly]." *Mahoney v. Byers*, 187 Md. 81, 84, 48 A.2d 600, 602 (1946); *Jacobson v. Md. Racing Comm'n*, 261 Md. 180, 183, 274 A.2d 102, 104 (1971). The statute and "the Commission's rules and regulations provide a comprehensive scheme for the regulation of horse racing in Maryland." *Silbert v. Ramsey*, 301 Md. 96, 105, 482 A.2d 147, 152 (1984).

The Commission's "Rules of the Race" are contained in Commission regulation 50. As previously noted, *supra* footnote 2, under certain circumstances "[a] horse crossing another so as actually to impede him *shall* be disqualified...." COMAR 09.10.01.50C (emphasis added). Furthermore, "[i]f a jockey wilfully strikes another horse or jockey, or rides wilfully or carelessly so as to injure another horse ... his horse shall be disqualified." COMAR 09.10.-01.50E. On the other hand, if a horse or jockey merely "jostles another horse, the aggressor *may* be disqualified." COMAR 09.10.01.50D (emphasis added).[4] If the stewards ascertain that any violation of the Rules of the Race has occurred, they have the authority to determine the proper order of finish of the participating horses, and "they *may* disqualify the horse." COMAR 09.10.01.50(O) (emphasis added).[5] In her complaint filed in the court below, the plaintiff relied on both COMAR 09.10.01.50C and 09.10.01.-50D, although disqualification is obviously more discretionary under the language of the latter regulation than it is under the language of the former.

Commission regulation 35, as well as Commission regulation 50G concerning "Rules of the Race," deal with the time, place and manner of making objections and with

---

**4.** *See* footnote 2, *supra.*

**5.** COMAR 09.10.01.50(O) states in its entirety as follows:

"O. If any of the rules herein outlined are violated, and the offending horse or horses finish the race in position entitling them to any part of the purse, the stewards are herein vested with the power of determining their proper place in the race, or they may disqualify the horse or horses, if, in their judgment, the circumstances justify their action."

appeals to the Commission from a stewards' ruling on an objection. The time and manner of making an objection vary with the nature of the objection and subject matter involved. For example, regulation 35A, COMAR 09.10.01.-35A, states that "[a]ll objections, *except claims of interference during a race*, shall be made to the stewards in writing, and signed by the objector." (Emphasis added). The times for making objections vary considerably. For example, there is no set time limit for making an objection "[i]n ... cases of fraud or wilful deception." COMAR 09.10.01.35N. Certain types of objections can be made up to "48 hours, exclusive of Sundays, after the close of a race meeting...." COMAR 09.10.01.35K(1). Others must be made within 48 hours "from the time the race is run." COMAR 09.10.01.35K(2). But, as mentioned earlier, regulation 35H mandates that "[o]bjections to a horse based on an occurrence in a race shall be made before the numbers of the horses placed in the race have been officially confirmed." COMAR 09.10.01.35H. Also, if the basis for the objection is a complaint that one of the rules in regulation 50 has been violated, the objection must be made "before or immediately after [the complainant's] jockey has passed the scales...." COMAR 09.10.01.50G.

The plaintiff's complaint in the present case was based on an occurrence in a race and on an alleged violation of regulation 50. The plaintiff, however, did not make an objection before the number of the horses placed in the race had been officially confirmed or before her jockey had passed the scales. In fact, she never made an objection or complaint to the stewards. Thus, under the plain wording of regulations 35H and 50G, there was no timely objection.

There is no provision in the regulations for excusing the time limits set forth in the regulations on the ground that neither the owner nor her trainer nor her jockey saw the violation of the Commission's rules. While the stewards have the authority on their own of "taking cognizance of foul riding" (COMAR 09.10.01.50G) or other violations of the rules and of disqualifying the offender (COMAR 09.10.-

01.35N, COMAR 09.10.01.50(O)),[6] there is no provision for an appeal to the Commission where the stewards merely initiate an inquiry and then take no action. Instead, appeals to the Commission relating to a race are based on *objections* having been made. COMAR 09.10.01.35E states (emphasis added):

"E. The stewards shall decide every *objection pertaining to a race.* From every decision, an appeal in writing may be made to the Commission within 48 hours *of the time the objector* has been officially informed of the decision."

Similarly, COMAR 09.10.01.35L states in relevant part (emphasis added):

"L. Every *objection* shall be decided by the stewards, but their decision is subject to appeal in writing to the Commission...."

As the plaintiff made no timely objection to the stewards concerning the running of the race, and as the stewards on their own did not take any action, the plaintiff under regulations 35 and 50 was not entitled to appeal to the Commission.

[2] The plaintiff's response to the language of regulations 35 and 50 is to rely upon language in paragraphs V(3), V(5) and V(6) of regulation 45, COMAR 09.10.01.-45V(3)(5)(6). The plaintiff seizes upon certain language in these paragraphs referring to "appeals to the Maryland Racing Commission," and states that the language authorizes appeals from all actions of the stewards regardless of the timeliness of any objection. The plaintiff's argument represents a classic example of taking language out of context.

Regulation 45, titled "Stewards," deals generally with the appointment, duties, and power of the stewards, including,

---

6. COMAR 09.10.01.35N states in part that "the stewards, on their own initiative, may call for proof that a horse ... is [not] disqualified in any respect...." As to COMAR 09.10.01.50(O), *see* footnote 5, *supra.*

*e.g.*, duties before a race actually begins (paragraphs D, E), authority to regulate the conduct of racing officials, owners, trainers, jockeys and grooms during, before, and after races (paragraph J), control over stands, weighing rooms, and jockey rooms (paragraph K), determination of questions concerning entries (paragraph L), power to impose fines and/or suspensions upon persons for violating the rules (paragraph O), power to examine horses (paragraph Q), authority to appoint deputies (paragraph S), authority over pari-mutuel betting machines (paragraph T–1), etc. Paragraph V of regulation 45, entitled "Violations," states as follows:

"V. Violations.

"(1) If the stewards find that any person licensed by the Commission has violated any of the rules of the Commission or has been involved in any improper turf practice, they may exclude this person from the grounds, or any portion of the grounds, of the association conducting the meeting or the grounds of any other association under the jurisdiction of the Commission, or may suspend the license of this person to act or ride for a period not exceeding 90 days, or may fine this person not exceeding $500, or they may impose any combination of the above sanctions. If the stewards consider that the violation merits sanctions beyond those permitted in this rule, they shall promptly refer the matter to the Maryland Racing Commission, which shall institute proceedings against this person under Regulation .10. The stewards shall have the power to suspend the license of this person pending action by the Commission.

"(2) *A person licensed by the Commission who is fined, excluded from the grounds, or disciplined by the stewards may appeal to the Maryland Racing Commission from the stewards' ruling.*

"(3) *Except in the case of objections under Regulation .35,* all appeals to the Maryland Racing Commission shall be in writing stating the reasons for the appeal and filed with the Maryland Racing Commission within 7 days of the date of the stewards' ruling.

"(4) At the time of filing any appeal from a decision or ruling of the stewards, a deposit of $50 shall accompany the appeal. If the Maryland Racing Commission determines that the appeal was justified, this sum shall be refunded to the person appealing the decision or ruling. If the Maryland Racing Commission determines that the appeal was not justified, this sum may be retained to cover the costs and expenses of the appeal.

"(5) Upon receipt of the written appeal, the Maryland Racing Commission, through its Executive Director, shall send the person written notice, advising him of the time, date, and place at which the Maryland Racing Commission shall hold a hearing on the appeal. The Maryland Racing Commission shall hold the hearing as promptly as possible with due regard to the rights of the person involved. At the hearing, the person is entitled to be represented by counsel, to be confronted with the evidence on which the stewards' ruling was based, to testify on his own behalf, and to produce other testimony or evidence relevant to his appeal.

"(6) A person who appeals to the Maryland Racing Commission from a steward's ruling may apply to the Maryland Racing Commission for a suspensive stay of the effect of the steward's ruling pending disposition of the appeal by the Maryland Racing Commission. The decision to stay a steward's ruling pending disposition of the appeal is within the sole discretion of the Maryland Racing Commission." (Emphasis added).

It is clear that the language in paragraphs V(3) through V(6) of regulation 45 does not grant one in the plaintiff's position a right of appeal to the Commission. The only right of appeal granted by regulation 45 is in paragraph V(2), which grants a right of appeal to persons fined, excluded or disciplined by the stewards. It grants a right of appeal to those persons subject to the stewards' disciplinary authority in paragraph V(1) and in certain other paragraphs of regulation 45.

Paragraphs V(3) through V(6), instead of granting a right of appeal, merely set forth the manner or procedures for taking appeals to the Commission. Moreover, even with regard to the manner of taking appeals, paragraph V(3) specifically excepts cases governed by the objection procedure under Regulation 35. Instead of the seven days for an appeal to the Commission provided for in regulation 45 V(3), an appeal to the Commission concerning a matter governed by regulation 35 must be taken within 48 hours of the stewards' decision. COMAR 09.10.01.35M ("Notice of appeal shall be given in writing to the Commission with 48 hours of the decision being made").

The Commission correctly held that the matter complained of by the plaintiff was governed by the Commission's regulations 35 and 50, that under those regulations a stewards' ruling on a timely objection was the only route to an appeal and a hearing before the Commission, that the plaintiff failed to make a timely objection, and that, therefore, the plaintiff was not entitled to have an appeal heard by the Commission.[7]

## III.

The plaintiff next argues that under principles of procedural due process and equal protection, embodied in

---

7. As an alternate ground, the defendants suggest that the plaintiff was not an aggrieved party and, therefore, has no standing to complain. COMAR 09.10.01.50G, dealing with complaints under the "Rules of the Race" regulation, states in pertinent part:

"G. Complaints under this rule can only be received from the owner, trainer or jockey of the horse alleged to be aggrieved...."

The plaintiff was clearly the owner of Pulverizing, and Pulverizing, which finished second in the race, was aggrieved under the plaintiffs' theory of the case. According to the plaintiff, the conduct of the horse finishing first, Diamond Donnie, was such that Diamond Donnie was required to have been disqualified under the Commission's regulation 50. As previously mentioned, if Diamond Donnie were required to have been disqualified, presumably first place and the first place purse would have been awarded to Pulverizing. An alleged unlawful failure to award the purse to a plaintiff who is assertedly entitled to the purse, would seem to be sufficient to make the plaintiff "aggrieved."

both the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, she was entitled to an appeal and hearing before the Commission.

In the present context, in order to show that procedural due process entitled the plaintiff to a full appeal and hearing before the Commission, the plaintiff would be required to show that state action was involved, that a property interest within the meaning of the due process clauses was implicated, and that the type of hearing sought was required by the due process clauses. *See, e.g., Department of Transportation v. Armacost,* 299 Md. 392, 416, 474 A.2d 191, 203 (1984); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052, 1056, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980); *Riger v. L & B Ltd. Partnership,* 278 Md. 281, 288–290, 363 A.2d 481, 485–486 (1976).

In the case at bar, we can assume arguendo that the requisite State action was involved, that the plaintiff had a property interest in the first place purse money which was protected by the due process clauses, and that one in her position would ordinarily be entitled to a full hearing before the Commission. The Commission's regulations in fact granted to one in the plaintiff's position the opportunity to have an appeal and full hearing before the Commission. The plaintiff, in order to avail herself of this opportunity, simply had to take action in a timely manner. If the plaintiff had made a timely objection in accordance with the Commission's rules, she would have been entitled to a stewards' ruling on her objection and to an appeal, with a hearing, before the Commission from an adverse ruling by the stewards. The default was the plaintiff's in failing to make a timely objection.

Even though one may have a constitutional right to a particular procedure, that right may be subjected to a reasonable requirement that some action be taken within a specified time in order to exercise the right. *Bringe v.*

*Collins,* 274 Md. 338, 349–350, 335 A.2d 670, 677–678, *application for stay denied,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 475 (1975), and cases there cited. The failure to take such action in a timely manner constitutes a waiver of the right. *Duignan v. United States,* 274 U.S. 195, 198, 47 S.Ct. 566, 567, 71 L.Ed. 996 (1927); *Bringe v. Collins, supra,* 274 Md. at 350, 335 A.2d at 677. This principle is fully applicable to the due process right to a hearing. As we recently pointed out, " '[D]ue process is not violated merely because the burden is put on the defendant to request a hearing,' " *Golden Sands Club v. Waller,* 313 Md. 484, 495, 545 A.2d 1332, 1338 (1988), quoting from *United States v. An Article of Device "Theramatic",* 715 F.2d 1339, 1343 (9th Cir.1983), *cert. denied sub nom., Cloward v. United States,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984).

Moreover, the principle has been applied to the right to a hearing before administrative agencies. As pointed out in one administrative law treatise, B. Schwartz, *Administrative Law,* § 5.3 (2d ed. 1984):

"Administrative lawyers tend to speak of the *right* to be heard, which may be guaranteed by due process and/or by statute. However, it is more accurate to speak of the right to an *opportunity* to be heard. Like other rights, the right to be heard can be waived."

In language particularly applicable to the plaintiff's argument in the present case, the United States Court of Appeals for the Sixth Circuit has stated (*Brennan v. Winters Battery Mfg. Co.,* 531 F.2d 317, 324–325 (6th Cir.1975), *cert. denied,* 425 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815 (1976)):

"Under the provisions of the Act, respondent had an opportunity for a due process hearing before an Administrative Law Judge and the Commission, and the right to judicial review before this court. It forfeited that right by failing to give notification to contest within [the time prescribed]. Although it may be argued with logic that the time period is too short, this is a matter for determination by Congress. \* \* \* The controlling fact is that

respondent had a right to a due process hearing, which it failed to exercise. We find no deprivation of due process."

*See National Coal Operators' Assn. v. Kleppe,* 423 U.S. 388, 399, 96 S.Ct. 809, 815, 46 L.Ed.2d 580 (1976) ("When no request for a hearing [before the administrative agency] is made, the operator has in effect voluntarily defaulted and abandoned the right to a hearing and findings ..."); *Atlas Roofing Co. v. Occupational S. & H. Rev. Com'n,* 518 F.2d 990, 1012 (1975), *affirmed,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) ("the employer's affirmative burden to initiate the adversary [administrative] proceedings [does not violate] due process"). *See also, e.g., Womack v. Merit Systems Protection Bd.,* 798 F.2d 453 (Fed.Cir.1986); *McLean Trucking Co. v. Occupational Safety & H.R. Com'n,* 503 F.2d 8, 11 (4th Cir.1974); *King v. Hampton,* 451 F.2d 247, 249 (8th Cir.1971); *Moore v. D.C. Dept. of Empl. Services,* 524 A.2d 39 (D.C.App.1987).

▬ The requirement that an objection based on a violation of the Rules of the Race be made to the stewards promptly after the running of the race is not unreasonable. Nothing prevented Heft from positioning herself or her agents in such a manner that they would have seen a violation of regulation 50C or 50D during the start or running of the race. A significantly longer time period to make an objection, during which the stewards could not declare the race official, would cause delay to the betting public, could result in many bettors destroying tickets which might later be deemed winning tickets, would delay the start of the next race, and might alter the nature of horse racing in Maryland. In light of the Commission's expertise and the discretion which the Legislature has vested in the Commission, we cannot conclude that the time period for making an objection is unreasonable. As the plaintiff failed to make a timely objection, she waived any due process right which she may have had to an appeal and hearing before the Commission.

For essentially the reasons set forth above, we reject the plaintiff's argument that equal protection principles are offended by the classification between those who make a timely objection and those who do not because they failed to notice a rule infraction. This classification obviously has a rational basis.

## IV.

■ The plaintiff's final argument is that, even if the Commission's decision denying her appeal and administrative hearing is upheld, she was entitled to a writ of mandamus requiring the stewards to disqualify Diamond Donnie and award first place to Pulverizing. She relies on this Court's statement in *Mahoney v. Byers, supra,* 187 Md. at 85, 48 A.2d at 603, that "[a] violation of [one's] right by the Commission can be reviewed by the court in a mandamus proceeding."

Of course, prior to the enactment of the Maryland Administrative Procedure Act, Code (1984), §§ 10–101 through 10–405 of the State Government Article, decisions of the Racing Commission in contested cases were subject to judicial review by mandamus proceedings. *Mahoney v. Byers, supra.* Nevertheless, as the *Mahoney* case went on to point out, such judicial review was limited to correcting errors of law and determinations which were arbitrary, capricious, or unsupported by substantial evidence. A court "cannot substitute its discretion for the discretion of the Commission where there is evidence that reasonably justifies the Commission's finding, even though the court may disagree with the Commission." *Mahoney v. Byers, supra,* 187 Md. at 85, 48 A.2d at 603.

■ Decisions of the Racing Commission are now subject to judicial review under the standards of the Administrative Procedure Act, § 10–215 of the State Government Article, and under the principles of administrative law which have become embodied in Maryland common law. One such principle is that a person may not obtain judicial review of a

matter when he or she failed to properly raise the matter before the administrative agency. *See, e.g., Consumer Protection v. Consumer Pub.*, 304 Md. 731, 775, 501 A.2d 48, 71 (1985); *P.G. Doctors' Hosp. v. HSCR Comm'n*, 302 Md. 193, 226, 486 A.2d 744, 761 (1985); *Cicala v. Disability Review Bd.*, 288 Md. 254, 261–262, 418 A.2d 205, 210 (1980); *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 518–519, 390 A.2d 1119, 1127 (1978). More specifically, when one is entitled to raise a matter before an agency by making a timely objection or request, and thereby obtain a hearing at which the agency will consider the merits of the matter, but the person fails to take the required timely action and the agency therefore denies him a hearing and refuses to consider the merits of the matter, such person is not entitled to have a court consider the issue. In this situation, the procedural default before the agency ordinarily precludes judicial review of the merits. *See, e.g., Brennan v. Winters Battery Mfg. Co., supra*, 531 F.2d at 324–325; *Siler v. Dept. of Employment Services*, 525 A.2d 620, 622 (D.C.App.1987).

Apart from principles of administrative law, and even if the Commission's regulations had not provided for an appeal to the Commission, this would not be an appropriate case for the issuance of a writ of mandamus. A stewards' ruling under regulations 50C and 50D involves the application of somewhat complex regulatory standards to the facts of a particular situation. Under our decisions, this is an administrative exercise of judgment which is not controllable by mandamus. *Bovey v. Exec. Dir., Health Claims*, 292 Md. 640, 649, 441 A.2d 333, 338 (1982) ("the Director is to bring his sound judgment" in applying certain statutory criteria, and, therefore, "[m]andamus simply does not lie"); *Brack v. Bar Association*, 185 Md. 468, 474, 45 A.2d 102, 105 (1945) (mandamus "will not be issued if the ... duty ... [be] of a nature to require the exercise of judgment"); *Brack v. Wells*, 184 Md. 86, 90, 40 A.2d 319, 321 (1944) ("When an act ... depends upon ... judgment, the writ of mandamus will not lie"); *Fooks v. Purnell*, 101 Md. 321,

323, 61 A. 582 (1905) ("when a matter is confided to the ... judgment of a tribunal or official, no writ of mandamus would lie ... to reverse a decision made in pursuance thereof").

Consequently, there is no merit to the plaintiff's argument that she was entitled to a writ of mandamus.

JUDGMENT AFFIRMED, WITH COSTS.