643 A.2d 412

MARYLAND RACING COMMISSION

v.

Charles H. CASTRENZE, Jr.

Peter G. ANGELOS

v.

MARYLAND RACING COMMISSION.

No. 140, Sept. Term, 1991.
No. 11, Sept. Term, 1992.

Court of Appeals of Maryland.

June 28, 1994.

Bruce C. Spizler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

William M. Huddles (Andrew H. Vance, Braude & Margulies, P.C., all on brief), Baltimore, for respondent.

Frederic M. Brandes (Law Offices of Peter G. Angelos, both on brief), Baltimore, for petitioner.

Bruce C. Spizler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

The principal issue before us in these cases concerns the relationship between the license suspension provisions of the Maryland Administrative Procedure Act ("APA"), Code (1984, 1993 Repl.Vol.), § 10–405 of the State Government Article, and a regulation of the Maryland Racing Commission providing that the Commission will reciprocally honor a suspension of a trainer's license by a sister racing jurisdiction.[1] For the

---

\* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The Administrative Procedure Act was codified at Code (1984, 1993 Repl.Vol.), §§ 10–101 through 10–405 of the State Government Article. Section 10–405, in effect during the time period relevant to these two actions, provided:

"**Revocation and suspension.**

(a) *In general.*—Except as provided in subsection (b) of this section, a unit may not revoke or suspend a license unless the unit first gives the licensee:

(1) written notice of the facts that warrant suspension or revocation; and

(2) an opportunity to be heard.

(b) *Emergency action.*—A unit may order summarily the suspension of a license if the unit:

(1) finds that the public health, safety, or welfare imperatively requires emergency action; and

(2) promptly gives the licensee:

(i) written notice of the suspension, the finding, and the reasons that support the finding; and

(ii) an opportunity to be heard."

Recognizing that license revocations and suspensions by their nature constitute a subset of contested cases generally, by Ch. 59 of the Acts of

reasons discussed below, we hold that the automatic disqualification of a trainer from racing in Maryland by virtue of a foreign suspension does not itself amount to a license suspension by the Maryland Racing Commission and, therefore, does not require compliance with § 10–405 of the APA. Furthermore, we hold that, in the context of reciprocally honoring another jurisdiction's suspension, due process requirements are satisfied when the trainer is promptly given written notice of the facts deemed to warrant the reciprocal ruling and is informed of the opportunity to be heard on the matter.

## I.

This opinion involves two separate cases, and we set forth below the facts of each case.

### A. *No. 140, Maryland Racing Commission v. Castrenze*

Charles H. Castrenze, Jr., is licensed in Maryland and Delaware, as well as in other states, as a trainer of thoroughbred race horses. On June 30, 1990, Castrenze failed to arrange for the timely administration of Furosemide (Lasix) to a horse which he had entered in a Delaware race, resulting in a late scratch. Consequently, on July 2, 1990, the Delaware Stewards fined Castrenze one hundred dollars. When Castrenze failed to pay the fine or take an appeal after 20 days had elapsed, the Delaware Stewards suspended his trainer's license. A copy of the suspension notice was mailed to Castrenze from Delaware on July 23, 1990. On July 28, 1990, Castrenze paid the Delaware fine and was restored to good standing.

---

1993, the General Assembly repealed § 10–405 and merged it without substantive change into the subtitle dealing with contested cases. *See* Code (1984, 1993 Repl.Vol., 1993 Supp.), § 10–226(c) of the State Government Article. *See also Maryland State Police v. Zeigler*, 330 Md. 540, 553, 625 A.2d 914, 920 (1993); *Medical Waste v. Maryland Waste*, 327 Md. 596, 609, 612 A.2d 241, 247 (1992). The new provision enacted by Ch. 59 applies to all administrative proceedings commencing on or after June 1, 1993.

On July 24, 1990, a horse trained by Castrenze was entered in the fourth race at the Laurel Race Course in Maryland. The horse, ELLOREE, won the race. Notice of Castrenze's Delaware suspension was published one day later in the *Daily Racing Form* of July 25, 1990. A competing trainer saw the publication and filed a protest with the Maryland Stewards on July 26, 1990, claiming that Castrenze had been ineligible to race ELLOREE in Maryland while under suspension in Delaware.

Thereafter, the Stewards gave Castrenze notice, and they conducted a hearing in the matter on August 4, 1990. After hearing testimony and reviewing the evidence, the Stewards determined that since "trainer Charles [H.] Castrenze was ineligible to participate in racing at Laurel Race Course on Tuesday, July 24, 1990," the horse ELLOREE was "disqualified from first position and placed last in the fourth race on Tuesday, July 24, 1990." Two Racing Commission regulations, when read together, provided the basis for the Stewards' determination. COMAR 09.10.01.48A provides for the Commission's recognition of a suspension issued by an authorized racing association in any other jurisdiction.[2] COMAR 09.10.01.17(CC) provides that a horse managed by a disqualified person may not be entered in a race.[3] Applying these provisions, the Stewards disqualified ELLOREE from first position, placed ELLOREE last in the race, and ordered that the purse be redistributed according to the new order of finish.

---

**2.** COMAR 09.10.01.48(A) states as follows:

".48 Reciprocity Rulings.
    A. Each person suspended or ruled off the course of a recognized association in any other state or any other country is ruled off wherever these rules have force."

**3.** COMAR 09.10.01.17(CC), formerly located at 09.10.01.17(DD), provides:

"CC. A horse may not be qualified to be entered, or to start in any race, if owned in whole or in part, or is under the management, directly or indirectly, of a disqualified person."

Castrenze appealed the Stewards' decision to the Maryland Racing Commission, claiming that he had not been notified of his Delaware suspension, either by the Delaware racing authority or the Maryland Racing Commission, prior to the running of the race in Maryland. The Racing Commission held a de novo hearing on the matter on December 12, 1990.

Initially at the hearing, the testimony of the Commission's chief investigator established that Castrenze had been under a Delaware suspension when he raced ELLOREE in Maryland on July 24, 1990. The remainder of the testimony at the hearing centered on whether Castrenze received notice by the Delaware Stewards of their suspension in time to affect his decision to race in Maryland. One administrative Steward testified that, regardless of when the Delaware notification may have been sent, "[t]he point [of Maryland's reciprocity ruling] was that a man is ruled off when the ruling is issued by the governing body." At the end of the hearing, the Racing Commission unanimously voted to uphold the Stewards' decision, informing Castrenze that

"[t]he rule says a horse may not be qualified to be entered or to start in any race if owned in whole or in part or is under the management directly or indirectly of a disqualified person. There's no requirement as far as notice is concerned, and [Mr. Castrenze] we're sympathetic toward you ... but the rule states and it really binds the Commission.... [W]hen that horse ran you were disqualified whether or not you had notice."

In its written Memorandum and Order issued on January 18, 1991, the Commission alternatively held that "[t]rainer Charles H. Castrenze, Jr. was properly notified that he had been fined $100 by the Delaware Stewards on June 30, 1990, and that such fine must be paid within 48 hours of its imposition absent a timely appeal." The Commission further found that "[t]rainer Castrenze raced the horse 'ELLOREE' in the fourth race at Laurel Race Course on July 24, 1990, while under suspension by the Delaware Racing Commission for failure to pay the fine." Taking into account only the fact

of the Delaware suspension and the timing of the Maryland race, the Commission concluded:

"By virtue of his suspension in Delaware and being denied the privileges of the grounds in Delaware, trainer Castrenze was, likewise, under a suspension and denied the privileges of the grounds of race tracks in Maryland. COMAR 09.10.01.48(A).

". . . On July 24, 1990, the horse 'ELLOREE' was under the management of trainer Castrenze, then a disqualified person, and, as a result, the horse was not qualified to start the fourth race at Laurel Race Course on that date. COMAR 09.10.01.17[ (CC) ]."

Castrenze filed this action for judicial review in the Circuit Court for Anne Arundel County. The circuit court, framing the issue as "whether the Maryland Racing Commission may suspend the license of a horse trainer pursuant to its reciprocity regulations without first providing notice of such suspension and an opportunity to be heard," held that the action of the Racing Commission violated § 10–405 of the APA. In overruling the Racing Commission's decision, the court stated as follows:

"The Racing Commission's application of its reciprocity regulation runs counter to the clear language of the statute requiring both notice and an opportunity for a hearing *prior* to the suspension of a license. Here Appellant was not provided with both notice and an opportunity to be heard until after July 24, 1990, the relevant date of suspension in Maryland. After first providing both notice and a hearing, the Racing Commission could have suspended Appellant as of the time of the initial hearing on August 4, 1990, but it could not suspend retroactively back to July 24, 1990."

The Racing Commission then appealed to the Court of Special Appeals, and, before consideration of the case by that court, we issued a writ of certiorari.

B. *No. 11, Angelos v. Maryland Racing Commission*

Peter G. Angelos is the owner of WIN A GAME, a thoroughbred race horse. WIN A GAME won the seventh race at

the Pimlico Race Course in Maryland on May 25, 1991. Subsequent to the running of the race, the Maryland Stewards discovered that the horse's trainer, John Battista Pizzurro, had been suspended effective May 25, 1991, at the Philadelphia Park racetrack in Pennsylvania, for failure to pay a forty dollar jockey fee.

The Stewards notified Pizzurro to appear before them for a hearing. As in the *Castrenze* case, the Stewards applied the COMAR 09.10.01.48(A) reciprocity rule in conjunction with the eligibility rule in COMAR 09.10.01.17(CC), and determined that WIN A GAME had been ineligible to race in the seventh race on May 25, 1991, because at that time the horse's trainer was under suspension in Pennsylvania. They ordered WIN A GAME disqualified from the race and the purse redistributed among the qualified horses.

Angelos appealed to the Racing Commission from the Stewards' decision and was granted a hearing. The uncontradicted evidence at the hearing established that trainer Pizzurro had been under a suspension by another jurisdiction when he raced the winning horse in Maryland on May 25, 1991. At the conclusion of the hearing, the Racing Commission unanimously affirmed, finding that

"reciprocity is simply a matter of the full faith and the credit of another state ... it is not an issue we can revisit and examine when another state has suspended a licensee, ... reciprocity exists and we accept it."

The Commission reiterated this point in its written Memorandum and Order of August 16, 1991, holding:

"Full faith and credit is to be given by the Maryland Racing Commission to a suspension issued by a foreign jurisdiction, and every person suspended or ruled off the course of a recognized racing association, such as Philadelphia Park, is also deemed to be ruled off in Maryland. COMAR 09.10.01.48(A).

"... 'WIN A GAME' was under the management of trainer Pizzurro when he participated in the seventh race at Pimlico Race Course on May 25, 1991. In light of the

suspension issued by the Pennsylvania Stewards, trainer Pizzurro was a 'disqualified' person on May 25, 1991, and, as such, 'WIN A GAME' was not qualified to start in the seventh race at Pimlico Race Course on May 25, 1991. COMAR 09.10.01.17(CC).

"... Neither the Maryland Stewards nor the Maryland Racing Commission is obligated or compelled to extend efforts to verify the propriety of proceedings conducted in a foreign jurisdiction that lead to a suspension, or to address collateral attacks made on the validity of the procedures utilized in the foreign jurisdiction that lead to a suspension."

Angelos filed an action for judicial review in the Circuit Court for Baltimore City. The court affirmed the decision of the Racing Commission, stating: "I can find no legal defect in their decision and as unfair as it is to the appellant in this case, the decision will have to stand." Angelos noted an appeal to the Court of Special Appeals and, prior to any proceedings in the intermediate appellate court, petitioned this Court for a writ of certiorari. We granted the petition and ordered that this case be argued on the same day as the *Castrenze* case.

Pending the determination of these cases, the prize money from each contested race is being held in an interest-bearing escrow account pursuant to COMAR 09.10.01.14.

## II.

As a threshold matter, we must determine whether the Racing Commission has standing to appeal the circuit court's reversal of its order in the *Castrenze* case.

Castrenze argues that "the [Racing] Commission has no right to appeal since it performed a purely quasi-judicial function." This argument is derived from *Zoning Appeals Board v. McKinney*, 174 Md. 551, 199 A. 540 (1938), in which the Court took the position that, absent specific statutory authority, an administrative agency exercising a quasi-judicial function usually is not entitled to appeal from a circuit court judgment reversing the agency's decision. In recent years,

however, we have made it clear that the *McKinney* doctrine does not apply to all agencies or to all adjudicative administrative proceedings. *See Board v. Haberlin,* 320 Md. 399, 404, 578 A.2d 215, 217 (1990); *Real Estate Comm'n v. Johnson,* 320 Md. 91, 97, 576 A.2d 760, 763 (1990); *Department v. Bo Peep,* 317 Md. 573, 584–585, 565 A.2d 1015, 1020 (1989), *cert. denied,* 494 U.S. 1067, 110 S.Ct. 1784, 108 L.Ed.2d 786 (1990); *Motor Vehicle Admin. v. Lindsay,* 309 Md. 557, 561, 525 A.2d 1051, 1053 (1987); *Consumer Protection v. Consumer Pub.,* 304 Md. 731, 742–746, 501 A.2d 48, 54 (1985); *County Comm'rs of Carroll Co. v. Gross,* 301 Md. 473, 477–481, 483 A.2d 755, 757–759 (1984). We have taken the position that, under the general statutory authorizations for appeal, agencies are entitled to appeal from adverse circuit court judgments where the functions of the agencies " 'are so identified with the execution of some definite public policy as the representative of the State, that their participation in litigation affecting their decisions is regarded by the Legislature as essential to the adequate protection of the State's interests.' " *Consumer Protection v. Consumer Pub., supra,* 304 Md. at 743, 501 A.2d at 54, quoting *McKinney, supra,* 174 Md. at 561, 199 A. at 545.

The Racing Commission is not simply an adjudicatory agency. Rather, the Commission performs an active role of policy formation in order to ensure the integrity of horse racing in this State. "The Legislature's purpose in granting to the Racing Commission the authority to promulgate rules was to assure that horse races in Maryland are 'conducted fairly, decently and clean[ly].' " *Heft v. Md. Racing Comm'n,* 323 Md. 257, 263–264, 592 A.2d 1110, 1113 (1991), quoting *Mahoney v. Byers,* 187 Md. 81, 84, 48 A.2d 600, 602 (1946). The sport of horse racing exists "only because it is financed by the receipts from controlled legalized gambling which must be kept as far above suspicion as possible." *Jacobson v. Md. Racing Comm'n,* 261 Md. 180, 183, 274 A.2d 102, 103 (1971). *See also Maryland Racing Comm. v. McGee,* 212 Md. 69, 76, 128 A.2d 419, 423 (1957).

The Racing Commission is given broad statutory authority to adopt regulations governing horse racing and betting on

racing in Maryland. Code (1992), § 11–210(a)(1) of the Business Regulation Article. It may investigate any office, track, or place of business of a licensee to ensure that the regulations of the Racing Commission are strictly complied with. § 11–211(a)(1). The Racing Commission has the power to require that an employee or official of a licensee be removed from the job. § 11–211(b). It may maintain a testing laboratory. § 11–212(a). Each of these provisions "is addressed to protecting the integrity and honesty of betting for the public." *Silbert v. Ramsey*, 301 Md. 96, 106, 482 A.2d 147, 152 (1984). Like the racing commissions in sister racing jurisdictions, the Maryland Racing Commission "is charged with the duty of protecting substantial public interest and is therefore a representative of this interest in all proceedings." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 301 (Ky.1972).

In *Consumer Protection v. Consumer Pub., supra*, 304 Md. at 746, 501 A.2d at 56, we stated that the

"Consumer Protection Division exercises a broad range of functions including rulemaking, investigating and prosecuting alleged violators of the statute.... The functions of the Division are closely 'identified with the execution of ... public policy as the representative of the state.' *McKinney*, *supra*, 174 Md. at 561, 199 A. 540. With its many different functions, its mandate to protect consumers and its role as a representative of the interests of the State, the Division is not the type of agency to which the rationale of *McKinney* applies."

The same statement is equally applicable to the Maryland Racing Commission.

For the above reasons, we hold that the Racing Commission has standing to maintain this appeal.[4]

---

**4.** By Ch. 59 of the Acts of 1993, the General Assembly formally overturned the *McKinney* doctrine with respect to state administrative agencies subject to the APA. *See Report of the Commission to Revise the Administrative Procedure Act: Initial Report on Subtitles 2 and 4 of the APA*, 10, 55–57 (September 1, 1992). Newly enacted § 10–223(b)(2) of the State Government Article provides that an agency may appeal an

### III.

■   Both Castrenze and Angelos argue that, in applying COMAR 09.10.10.48A, the Maryland Racing Commission retroactively suspended the trainers' licenses, with the effectiveness of the suspensions being prior to the time of notice and the opportunity to be heard.   They contend that such agency action violates the procedural safeguards provided for in Code (1984, 1993 Repl.Vol.), § 10–405(a) of the State Government Article.

In its arguments to this Court, the Racing Commission seems to take somewhat inconsistent positions.   The Commission first appears to dispute the characterization of COMAR 09.10.01.48A as effecting retroactive license suspensions, reasoning instead in the *Castrenze* case that "[t]he Commission (and its Stewards) merely honored a suspension imposed in *Delaware* by invoking Maryland reciprocity provisions," and similarly, in the *Angelos* case, that "the Stewards and the Commission merely honored, through a reciprocity regulation, the sanction imposed on Pizzurro in Pennsylvania, the effect of which was the disqualification of the horse trained by Pizzurro."   At the same time, however, the Commission maintains that there was complete compliance with § 10–405(a), which is applicable only when a Maryland administrative unit takes action "to revoke or suspend a license."[5]

We agree with Castrenze and Angelos that, by enacting § 10–405(a), the General Assembly intended that an adminis-

---

adverse final judgment of the circuit court.   The General Assembly did not make this provision retroactive to cases currently in litigation.   Had the *Castrenze* case been filed on or after June 1, 1993, the Racing Commission would have standing under the new provision to appeal the reversal of its order by the circuit court.

**5.**   The § 10–405 issue in these cases concerns subsection (a) and not subsection (b).   At no time in either case did the Commission purport to invoke the "emergency action" provisions of § 10–405(b), and in this Court the Commission does not rely on § 10–405(b).   Moreover, nothing in § 10–405(b) authorizes a retroactive suspension; the subsection simply authorizes an immediate suspension, prior to the notice and opportunity to be heard.

trative agency could not suspend a license without first giving the licensee written notice of the facts that warrant suspension and an opportunity to be heard in the matter. Under the plain language of § 10–405(a), the notice and opportunity for a hearing must occur "first," prior to the effective date of any suspension. Clearly then, § 10–405(a)'s procedural requirements would apply if, in honoring a license suspension issued by another racing jurisdiction, the Maryland Racing Commission's action is deemed to constitute a "suspension" within the meaning of § 10–405(a). Under that view, the Racing Commission would be prohibited from retroactively dating its own suspension to the time of the race, which was prior to the date when the trainer was notified and informed of the opportunity to be heard.

Nevertheless, as we view § 10–405 and COMAR 09.10.01.-48A, application of the reciprocity regulation does not constitute a "suspension" by the Maryland Racing Commission within the meaning of § 10–405. Rather, it was by operation of law, and not by any agency action under § 10–405, that both trainers were ruled off of Maryland's race courses. The only suspensions rendered were by the Delaware and Pennsylvania authorities. COMAR 09.10.01.48A automatically required that the Delaware and Pennsylvania suspensions be given effect in Maryland.[6]

In requiring that an administrative agency grant written notice of the facts warranting a suspension and an opportunity to be heard on the matter, § 10–405(a) contemplates a procedure under which a licensee may have the charges fully tried. *See* 2 F. Cooper, *State Administrative Law* 495 (1965). Such a scheme necessarily contemplates factual findings by the agency concerning the licensee's underlying conduct. As CO-

---

6. The dissent asserts that "without some action taken in Maryland by a Maryland agency, effect could not be given to the extra-Maryland suspension—there could be no disqualification of the trainer." We do not agree that any action by a Maryland agency was necessary before these trainers were ruled off of Maryland's racetracks. Both Castrenze and Pizzurro were already ruled off in Maryland at the time that the races were run, not by reason of any action taken by the Maryland Racing authorities to effect the suspensions, but by operation of law.

MAR 09.10.01.48A is worded and applied by the Maryland racing authorities, however, the regulation leaves no room for factual findings regarding the nature of the licensee's conduct and whether that conduct warrants a suspension. The provision flatly states that where a person is suspended or ruled off by any recognized racing association, that person is likewise ruled off in Maryland. The regulation does not state that a foreign suspension is merely to be taken into account in determining whether to effect a suspension in Maryland. *Compare* COMAR 09.10.01.48A *with* COMAR 09.10.01.48B ("Denial of a license by the racing commission of any other jurisdiction may be considered as grounds for denial of a license by the Commission").

Furthermore, it is clear from the administrative record that the scope of the pertinent inquiry at the Commission's hearings encompassed only those events triggering application of the COMAR 09.10.01.48A reciprocity provision, and did not include inquiries into the underlying facts or conduct or consideration of mitigating circumstances.[7] COMAR 09.10.01.48A is fully self-executing, allowing for complete reciprocity in enforcement among racing states. By applying the reciprocity regulation, the Maryland Racing Commission did not suspend the trainers. Rather, the trainers were suspended by Delaware and Pennsylvania authorities, and those suspensions were effective in Maryland by operation of law.[8]

Consequently, these cases do not involve suspensions of licenses, by a Maryland administrative agency, which are subject to § 10–405(a).

---

**7.** While raised by both Castrenze and Angelos before the Racing Commission, neither raises before this Court the issue of whether defective notice in the foreign jurisdiction may be a defense in the Maryland proceeding. Thus, we need not here explore the issue.

**8.** Neither Castrenze nor Angelos contends that the COMAR 09.10.01.-48A reciprocity regulation is invalid. Thus, we presume that the regulation is authorized by law and carries the force of a statute. *See* 2 K. Davis & R. Pierce, Jr., *Administrative Law Treatise* § 6.3, at 233–234 (3d ed. 1994) ("A legislative rule has the same binding effect as a statute.... [C]ourts must affirm a legislative rule as long as it represents a valid exercise of agency authority").

## IV.

Our holding that the Racing Commission's application of COMAR 09.10.01.48A does not implicate § 10–405(a) of the State Government Article does not mean that the trainers had absolutely no right to notice and the opportunity to be heard. Indeed, the trainers were entitled under due process principles to the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965). We cannot agree with the contention by Castrenze and Angelos, however, that due process required notice and a hearing in Maryland prior to the effective period of the reciprocal action.

Neither the Due Process Clause of the Fourteenth Amendment nor Article 24 of the Maryland Declaration of Rights requires in every instance notice and a hearing before the rules of an administrative agency may be enforced against a licensee. As has often been stated, "[d]ue process does not require adherence to any particular procedure. On the contrary, due process is flexible and calls only for such procedural protections as the particular situation demands." *Department of Transportation v. Armacost,* 299 Md. 392, 416, 474 A.2d 191, 203 (1984). *See, e.g., Connecticut v. Doehr,* 501 U.S. 1, 10, 111 S.Ct. 2105, 2112, 115 L.Ed.2d 1, 13 (1991); *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976); *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738–739, 42 L.Ed.2d 725, 737 (1975); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961); *Hare v. Motor Vehicle Admin.,* 326 Md. 296, 303, 604 A.2d 914, 917 (1992); *Brosan v. Cochran,* 307 Md. 662, 671, 516 A.2d 970, 975 (1986); *Riger v. L & B Ltd. Partnership,* 278 Md. 281, 289, 363 A.2d 481, 486 (1976), and cases there cited.

Certainly, the magnitude of the trainer's interest in being notified that the Maryland racing authorities intend to recognize an out-of-state suspension issued against him is substantial. Balanced against that interest, however, is the State's own interest in ensuring the integrity of racing. *See Barry v.*

*Barchi,* 443 U.S. 55, 65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365, 375 (1979) (balancing a horse trainer's property interest against the state's interest in "preserving the integrity of the sport and in protecting the public from harm" and holding that due process does not require an evidentiary hearing prior to the effectuation of the trainer's suspension); *Silbert v. Ramsey, supra,* 301 Md. at 109, 482 A.2d at 154, quoting *Jacobson v. Md. Racing Comm'n, supra,* 261 Md. at 183, 274 A.2d at 103 ("horse racing is an endeavor and undertaking that necessarily must be the subject of intensive, extensive and minute regulation"); *Maryland Racing Commission v. McGee, supra,* 212 Md. at 76, 128 A.2d at 423; *So. Md. Agri. Ass'n v. Magruder,* 198 Md. 274, 279–280, 81 A.2d 592, 594 (1951).

Another factor is the very limited scope of the issues to be resolved at the hearing. Under the terms of the reciprocity regulation, the Maryland hearing would seem to be limited to determining whether the trainer was the same person who was subject to the action in the other state, whether the other state in fact suspended the trainer, and the period of the suspension. Presumably an issue could be raised concerning the fundamental jurisdiction of the out-of-state suspending agency. In the instant cases, there were no disputes about any of these matters.

By granting a hearing promptly after the reciprocal actions went into effect, and considering the limited scope of the issues at the hearing, the Maryland Racing Commission gave both trainers the process that was due. *See Barry v. Barchi, supra,* 443 U.S. at 63–65, 99 S.Ct. at 2648–2649, 61 L.Ed.2d at 374–375; *Lemberos v. Laurel Racecourse, Inc.,* 489 F.Supp. 1376, 1387 (D.Md.1980) ("If plaintiff can prove at trial that he has a property interest in racing his horses, a hearing should have been held either before or after he was denied the right to enter his horses in races").

*IN NO. 140, JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR ENTRY OF A JUDGMENT AFFIRMING THE DECISION OF THE MARY-*

*LAND RACING COMMISSION. APPELLEE TO PAY THE COSTS.*

*IN NO. 11, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANT TO PAY THE COSTS.*

BELL, J., dissents.

BELL, Judge, dissenting.

Once the Maryland Racing Commission's right to appeal has been determined, with the resolution of which, in this case, I am in full agreement, the issue in this case becomes one involving determining how the Commission's actions in applying COMAR 09.10.01.48A should be characterized—deciding its substantive effect—and that, in turn, implicates the relationship between that regulation and Maryland Code (1984, 1993 Repl.Vol.) § 10–405(a) of the State Government Article. This case is not about whether it is good policy to have full reciprocity among racing states or how best to achieve a system that optimally advances the purpose of effectively and properly regulating racing. If these were the issues, then, in all probability, the result would be different. If the act of applying the regulation constitutes, or is tantamount to, a suspension of the trainer in Maryland, it was incumbent upon the Commission to comply with § 10–405(a), before forfeiting the purse earned by the horse trained by a suspended trainer.

There is no doubt but that the intent and the effect of the regulation is to disqualify a trainer who has been suspended in another state from participating in racing in this state. To "disqualify" is "[t]o divest or deprive of qualification: to incapacitate; to render ineligible or unfit." Black's Law Dictionary 924 (5th ed. 1979). The Maryland Racing Commission does not adjudicate the underlying suspension on the merits; it is required only to apply—give effect to—the statute. In fact, without some action taken in Maryland by a Maryland agency, effect could not be given to the extra—Maryland

suspension—there could be no disqualification of the trainer.[1] Moreover, as these cases graphically demonstrate, when the Maryland Racing Commission does not discover in advance of the race won by a horse that the suspended trainer trained, because the relationship between trainer and horse renders the horse disqualified, *see* COMAR 09.10.01.17(cc), the further consequence of applying the regulation is that any purse that the horse wins must be forfeited.

The majority holds that "application of the reciprocity regulation does not constitute a 'suspension' by the Maryland Racing Commission within the meaning of § 10.405." 335 Md. at 296–297, 643 A.2d at 418. It reasons that the regulation requires that suspensions ordered by other states be given effect in Maryland. That effect is accomplished by operation of law, not by agency action, *id.* at 297, 643 A.2d at 418, and certainly not by application of § 10–405(a). Because, the majority says, § 10–405(a) "contemplates a procedure under which a licensee may have the charges fully tried," *Id.* at 297, 643 A.2d at 418, citing *Cooper,* State Administrative Law 94 (1965), and the regulation, as worded and applied by the Commission, precludes factual findings relating to the underlying conduct, and, instead, in this case, "encompassed only those events triggering application of COMAR 09.10.01.48(a) reciprocity provision." *Id.* at 298, 643 A.2d at 418. The majority also finds significance in the fact that the regulation does not identify a foreign suspension as a factor to be taken into account in determining the effect of a suspension in Maryland. It concludes by reiterating that the trainers were suspended in other states and their suspensions were simply made effective in Maryland by operation of law. *Id.*

I cannot agree. The essential nature of the act of applying the regulation cannot be changed simply by refusing to call that act what it actually is. The effect of applying the

---

1. I agree with the majority that, for reciprocity purposes, "due process requirements are satisfied when the trainer is promptly given written notice of the facts deemed to warrant the reciprocal ruling and is informed of the opportunity to be heard on the matter." Majority opinion, 335 Md. at 288, 643 A.2d at 414.

reciprocity provision is to suspend the trainer in Maryland just as effectively as the agency action does in the other state. Characterizing it as being different does not make it so. The consequence, in other words, of applying the regulation is the exact same in this State, as it is in the State in which the suspension is recognized as a suspension. As Shakespeare put it: "That which we call a rose[, b]y any other name would smell as sweet." [2]

To be sure, a state may, without offending due process, give effect, in that state, to a suspension ordered in another state. It could do so, I suppose, by administrative regulation promulgated by the agency charged with regulating the activity at issue, as was done in the case *sub judice*. When, however, that state's legislature has provided, by statute, the procedural condition precedent to suspension, resort to that option has been foreclosed; while, in the absence of a procedural statute, reciprocity may be given effect as a matter of law, enactment of a procedural statute evidences a legislative intent to the contrary. That is precisely what has occurred in this case. Section 10–405(a) requires notice and a hearing prior to ordering a suspension. Giving effect in Maryland to a suspension ordered in another State, as I have indicated and shown, is to order a suspension in Maryland. Because § 10–405(a) is clear and unambiguous as to the procedural prerequisites for suspension, it must follow that, unless the regulation trumps the statute, the trainer's suspension was not effective in Maryland until those prerequisites were met. That being the case, forfeiture of the purses was improper.

There is nothing in § 10–405(a) which suggests, not to mention says, that, to be effective, factual findings by the subject agency must concern the underlying conduct. That section merely requires "written notice of the *facts* that warrant suspension or revocation." (emphasis added) The evidence from which the facts are to be determined is defined by COMAR 09.10.01.48A. Thus, as the majority recognizes when

---

**2.** William Shakespeare, Romeo and Juliette, The Second Act, sc. 2.

addressing the due process requirement, a trainer receives all of the process that he or she is due when he or she is notified, in writing, of the fact of the suspension in the other State and is given the opportunity to be heard in this State. As I see it, the only requirement that needs to be added in order for there to be complete compliance with § 10–405(a) is that the notification occur prior to the trainer being declared disqualified in Maryland. If it is deemed that this statutory overlay somehow undermines the efficient and proper working of the Maryland Racing Commission, then it is to the Legislature that complaint should be addressed. In the context of a reciprocal suspension, then, the "facts" that warrant suspension are those which pertain to the *fact* of suspension in the other State. There need be no further amplification.

To summarize, the regulation authorizes the Commission to declare any trainer or other person suspended in another state off-track in Maryland. Despite its unqualified language, the regulation must be read in conjunction with the statute. The statute requires that, in order for a suspension to be effective, the affected person must first be given notice and an opportunity to be heard. This scheme is clear and unambiguous and easy to administer. Ordinarily, it also will avoid the situation *sub judice*. When the Commission discovers that a trainer with a horse slated to race in Maryland is off-track in another state, it will notify that trainer prior to the race and, if necessary, conduct a hearing. On the other hand, if the Commission fails to discover the suspension pre-race and, therefore, does not declare the suspended trainer off-track in Maryland prior to the race, it may not forfeit the purse if that horse wins. The onus is on the Commission to discover whether, and when, trainers are suspended and to act in advance of the race. This is implicit in the statute's requirement of a hearing, after notice. The Commission's failure to so act should not, as the majority opinion contemplates and permits, inure to the detriment of an affected trainer. Certainly the Maryland Racing Commission may not be relieved, by regulation, of its obligation to police, in advance, those who

participate in Maryland racing, when the Maryland Legislature has, by statute, prescribed otherwise.

I dissent.